United States District Court
Southern District of Texas

**ENTERED**
June 25, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

FREDDY JOSE VALBUENO SOTO        §
                                 §
VS.                              §        CIVIL ACTION NO. 5:26-cv-497
                                 §
MIGUEL VERGARA[1] *et al.*       §

## ORDER

Petitioner, a Venezuelan national in ICE custody, brings this 28 U.S.C. § 2241 Petition challenging his re-detention following revocation of his order of supervised release (Dkt. No. 1). Following an exhaustive review of the law and facts, the Court **GRANTS IN PART** and **DENIES IN PART** the Petition (Dkt. No. 1). Respondents' Motion for Summary Judgment (Dkt. No. 7) is **DENIED**.

## I.    BACKGROUND

On August 24, 2017, Petitioner, a Venezuelan national, applied for a B2 visitor visa for admission to the United States at the Miami International Airport (Dkt. Nos. 1 at 4, ¶ 15; 7-1 at 2, ¶ 7). Believing Petitioner exhibited immigrant intent, USBP denied Petitioner's visitor visa and placed him in expedited removal proceedings (Dkt. Nos. 7 at 2; 7-1 at 2, ¶ 7; 7-2). Petitioner was removed to Venezuela on August 25, 2017[2] (Dkt. Nos. 7-1 at 2, ¶ 8; 7-3 at 1).

Petitioner returned to the United States on November 2, 2021 (Dkt. Nos. 7-1 at 2, ¶ 9; 7-4 at 1). ICE reinstated Petitioner's order of removal, which was final from its

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), David Venturella is substituted for Respondent Todd Lyons in this case. The Clerk of Court is **DIRECTED** to substitute this party on the docket sheet.

[2] Inexplicably, Petitioner alleges his removal was not effectuated at this time (Dkt. No. 1 at 4, ¶ 15). However, Petitioner executed a verification of removal dated August 25, 2017 (Dkt. No. 7-3 at 1). As this minor factual dispute has no bearing on its decision, the Court does not find it necessary to hold an evidentiary hearing.

1

original date of August 25, 2017 (Dkt. Nos. 7-1 at 2, ¶ 10; 7-2 at 1; 7-4 at 1). However, COVID-19 protocols in place merited Petitioner's release pursuant to an Order of Supervision ("OOS") (Dkt. Nos. 1 at 4, ¶ 15; 7-1 at 2, ¶ 11). **Neither party offered the OOS into the record**. Petitioner lived in the United States and complied with his OOS for over four years (Dkt. No. 1 at 4, ¶ 16). On December 22, 2022, he filed an asylum application, which remains pending to this day (Dkt. Nos. 7-1 at 2, ¶ 12).

For unknown reasons, ICE detained Petitioner during a routine check-in on February 14, 2026[3] (Dkt. Nos. 1 at 4, ¶ 16; 7-1 at 2, ¶ 13). Petitioner alleges ICE detained him without any of the procedural safeguards established to revoke his OOS, including written notice of revocation of his OOS, an opportunity to respond, or a post-revocation interview (Dkt. Nos. 1 at 4, ¶ 17; 8 at 2). Importantly, Respondents do *not* dispute this characterization (*see generally* Dkt. No. 7). Petitioner is presently detained at the Rio Grande Detention Center in Laredo.[4]

Petitioner filed the instant habeas proceeding, pursuing his immediate release and reinstatement of his OOS (*see* Dkt. No. 1). Respondents timely moved for summary judgment, principally arguing Petitioner's detention pending his removal proceedings is reasonable (Dkt. No. 7). Petitioner timely filed a reply, and the matter is now ripe for the Court's consideration (*see* Dkt. No. 8).

## II.    LEGAL STANDARDS

### A.  28 U.S.C. § 2241

Under 28 U.S.C. § 2241(c)(3), a detainee may seek habeas relief if they are "in

---

[3] Petitioner asserts he was detained on February 11, 2026 (Dkt. No. 1 at 4, ¶ 16). This disputed fact is immaterial, as the Court's analysis does not rest on the *Zadvydas* framework.

[4] See Online Detainee Locator System, U.S. Immigration and Customs Enforcement, available at https://locator.ice.gov/odls/#/search (last visited June 23, 2026).

custody in violation of the Constitution or laws or treaties of the United States." "The petitioner 'bears the burden of proving that [he] is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy [his] burden of proof by a preponderance of the evidence.'" *Puertas-Mendoza v. Bondi*, No. SA-25-CV-00890-XR, 2025 WL 3142089, at *1 (W.D. Tex. Oct. 22, 2025) (Rodriguez, J.) (quoting *Villanueva v. Tate*, 801 F. Supp. 3d 689, 696 (S.D. Tex. 2025)).

A court entertaining a habeas petition shall immediately "award the writ or issue an order directing the respondent to show cause why the writ should not be granted." 28 U.S.C. § 2243. In a similar vein, a court need not hold a hearing if the habeas petition "raises only questions of law, or questions regarding the legal implications of undisputed facts." *Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989); *see also Gomez-Simeon v. Bondi*, No. SA-25-CV-01460-JKP, 2025 WL 3470872, at *1, *6 (W.D. Tex. Nov. 24, 2025) (Pulliam, J.) (granting habeas petition without a hearing); *Puertas-Mendoza*, 2025 WL 3142089, at *1, *5 (same).

## A. Federal Rule of Civil Procedure 56

"As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000) (citations omitted). Federal Rule of Civil Procedure 56 provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant bears the initial burden "of informing the district court of the basis

3

for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The onus then shifts to the non-moving party "to go beyond the pleadings" and establish "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted) (citing Fed. R. Civ. P. 56(e)). The Court resolves all "factual controversies in favor of the nonmoving party," so long as the nonmovant's evidence is not so tenuous "that it could not support a judgment in favor of the nonmovant." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (first citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990); and then citing *Armstrong v. City of Dallas*, 997 F.2d 62 (5th Cir. 1993)).

### III.    DISCUSSION

Respondents move on three grounds: (1) because the Court lacks authority to issue a stay of removal; (2) as premature, since Petitioner has not been detained for the presumptively reasonable period outlined in *Zadvydas v. Davis*, 533 U.S. 678 (2001); and (3) based on Petitioner's statutorily imposed due process rights (Dkt. No. 7 at 2, 3–5). But none of Respondents' arguments meaningfully tackle the salient issue: whether Respondents adhered to the regulatory framework in revoking Petitioner's OOS.

#### A. The Court Maintains Subject Matter Jurisdiction

Respondents assert 8 U.S.C. § 1252(g) curtails the Court's jurisdiction to "issue a stay of removal, even to preserve the status quo" (Dkt. No. 7 at 2). True as that may be, Petitioner does not seek that relief. Rather, Petitioner urges the Court to release him subject to his previous OOS.

For that reason, 8 U.S.C. § 1252(a)(2)(B)(ii) could be relevant here. Mindful of its

4

duty to raise subject matter jurisdiction *sua sponte*, the Court briefly considers that provision's effect. *Colvin v. LeBlanc*, 2 F.4th 494, 498 (5th Cir. 2021) (citing *Union Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004)). Under § 1252(a)(2)(B)(ii) federal courts lack jurisdiction to review "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." *See also* 8 C.F.R. § 241.4. Courts generally agree § 1252(a)(2)(B)(ii) strips federal courts of jurisdiction to review the discretionary decision to revoke an OOS. *Villanueva*, 801 F. Supp. 3d at 698; *Deras Galdamez v. Noem*, No. 5:25-cv-252, slip. op. at 5 (S.D. Tex. Jan. 30, 2026) (Kazen, J.); *Pham v. Bondi*, No. CV H-25-5765, 2026 WL 969962, at *5 (S.D. Tex. Jan. 9, 2026).

But at the crux of Petitioner's challenge lies the process—or absence of it—he received in accordance with the revocation. "The Court unquestionably has jurisdiction to review [Petitioner's] claims that . . . [R]espondents have violated his statutory and constitutional rights to due process by re-detaining him." *Pham*, 2026 WL 969962, at *5 (collecting cases). As many courts have found, § 1252(a)(2)(B)(ii)'s text does not preclude Petitioner from challenging the manner Respondents revoked his OOS or "whether the [G]overnment followed its own regulations in doing so." *Villanueva*, 801 F. Supp. 3d at 698; *Deras Galdamez*, No. 5:25-cv-252, slip. op. at 5–6; *Mantena v. Johnson*, 809 F.3d 721, 728–29 (2d Cir. 2015). The Court therefore finds it has jurisdiction and turns to the Petition's merits.

### B.  8 C.F.R. § 241.4 Governs Petitioner's Revocation

Although the parties agree Petitioner was previously released on an OOS, it appears that no one included it in their briefing (Dkt. Nos. 1 at 4, ¶ 15; 7-1 at 2, ¶ 11).

Petitioner implies he was released under 8 C.F.R. § 241.4 (Dkt. No. 1 at 4, ¶ 19; 5, ¶ 20). Respondents ignore the pertinent regulations in their entirety, merely alleging Petitioner was released pursuant to COVID-19 guidelines (Dkt. No. 7-1 at 2, ¶ 11). The Court resolves this in Petitioner's favor and determines § 241.4 applies.

Once an alien is released under an OOS, established regulations constrain ICE's authority to re-detain them. 8 C.F.R. §§ 241.4, 241.13. "If ICE previously determined that there was no significant likelihood of removal of said individual in the reasonably foreseeable future, then § 241.13 applies; otherwise, § 241.4 applies." *Pedro O. v. Noem*, No. 26-CV-361 (ECT/LIB), 2026 WL 608314, at *3 (D. Minn. Feb. 27, 2026) (citing 8 C.F.R. §§ 241.13(a), (b)(1), (g)), *report and recommendation adopted*, No. 26-CV-361 (ECT/LIB), 2026 WL 615415 (D. Minn. Mar. 4, 2026). It is implausible Petitioner's release was issued pursuant to § 241.13. Respondents assert—and Petitioner does not dispute— Petitioner had been detained for two total days (one in 2017 and one in 2021) when he was released on November 17, 2021 (Dkt. Nos. 7 at 4; 7-1 at 2, ¶¶ 7–8; 8). *Martinez v. Hyde*, No. CV 25-13035-NMG, 2025 WL 3719656, at *2 (D. Mass. Dec. 23, 2025) (an OOS granted only two days after apprehension was likely issued under § 241.4). Such a quick turnaround is insufficient for ICE to determine that Petitioner's removal was not significantly likely in the foreseeable future, such that § 241.13 would govern. Nor does the record indicate that this finding was implicit in his release. Thus, the Court scrutinizes the lawfulness of ICE's revocation procedures under § 241.4.

## C.  Respondents Violated 8 C.F.R. § 241.4's Revocation Procedures

Under § 241.4(*l*)(1), ICE may revoke an alien's release for violations of the conditions of release. The neighboring provision, § 241.4(*l*)(2), further promulgates that only designated, high-level officials are discretionarily authorized to revoke an OOS if:

6

(i)    The purposes of release have been served;

(ii)    The alien violates any condition of release;

(iii)    It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or

(iv)    The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.

*See also Nguyen v. Noem*, No. 5:25-CV-176, 2026 WL 237282, at *9 (S.D. Tex. Jan. 28, 2026) (Saldaña, J.). Because Petitioner maintains—and Respondents do not dispute—that he "complied with all requirements of his [OOS] for years," § 241.4(*l*)(2) must serve as Respondents' revocation authority (Dkt. No. 1 at 4, ¶ 16).

### 1. Signing Official

The Executive Commissioner or ICE's District Director (if the circumstances do not reasonably permit referral of the case to the Executive Commissioner) must authorize the revocation of an OOS pursuant to § 241.4(*l*)(2). *See also Nguyen*, 2026 WL 237282, at *9; *Villanueva*, 801 F. Supp. 3d at 694 ("[O]nly two officials have the authority to revoke an Order of Supervision."). Here, the Court is in the dark. Respondents' sworn declaration contains no facts concerning whether Petitioner's OOS was revoked—much less whether an authorized official executed it. *Villanueva*, 801 F. Supp. 3d at 699. "In the absence of some evidence showing that [Petitioner's OOS] was lawfully revoked by someone with the authority to do so . . . [Respondents have] failed to show that [they] afforded [Petitioner] with due process in connection with the purported revocation of his [OOS]." *Id.* at 699–700.

### 2. Notice and Post-Revocation Interview

Petitioner proclaims: "ICE failed to comply with binding regulations requiring written notice of revocation and an opportunity for an informal interview" (Dkt. Nos. 1 at 7, ¶ 33; 8 at 2). Once again, Respondents fail to address whether they provided Petitioner with notice and a post-revocation interview. Nevertheless, the Court first

considers whether Petitioner was entitled to these safeguards.

As structured, § 241.4(*l*)(1) dictates: "Upon revocation, the alien will be notified of the reasons for revocation of his . . . release . . . . The alien will be afforded an initial informal interview promptly after his . . . return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." But Petitioner was revoked under § 241.4(*l*)(2), and that provision does not explicitly provide for notice or a post-revocation interview. When faced with this question, most courts conclude that § 241.1(*l*)(1)'s notice and post-revocation interview procedures are incorporated into § 241.4(*l*)(2). *See Zhu v. Genalo*, 798 F. Supp. 3d 400, 410–13 (S.D.N.Y. 2025) ("[R]edetention under section 241.4 requires notice and an informal interview, even when a noncitizen is detained because it is 'appropriate to enforce a removal order' under paragraph (*l*)(2)(iii)."); *Deras Galdamez*, No. 5:25-cv-252, slip. op. at 7–8; *Nguyen v. Dep't of Homeland Sec.*, No. CIV-26-87-R, 2026 WL 1506428, at *4 (W.D. Okla. May 29, 2026); *but see Barrios v. Ripa*, No. 1:25-CV-22644, 2025 WL 2280485, at *6 (S.D. Fla. Aug. 8, 2025) (noting that "the notice and interview requirements are only referenced in § 241.4(*l*)(1)"). The Court agrees with the prevailing authorities and holds re-detention under § 241.4(*l*)(2) requires notice and an informal post-revocation interview.

Here, there is no dispute that Respondents failed to provide Petitioner with notice and a post-revocation interview. Because Petitioner did not receive the proper procedures before the revocation of his OOS, the Court finds that Respondents failed to follow the controlling regulations.

### D. The Failure to Comply is a Due Process Violation

As has long been recognized, aliens are entitled to due process of the law under the Fifth Amendment. *Demore v. Kim*, 538 U.S. 510, 523 (2003); *Trump v. J. G. G.*, 604

U.S. 670, 673 (2025). "An agency's violation of its regulations may support a procedural due process claim." *Ayala Chapa v. Bondi*, 132 F.4th 796, 799 (5th Cir. 2025) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)). Generally, "the party asserting error [must] demonstrate prejudice from the error." *City of Arlington v. F.C.C.*, 668 F.3d 229, 243 (5th Cir. 2012), *aff'd*, 569 U.S. 290 (2013); *see also McKoy v. Fox*, 587 F. App'x 802, 805 (5th Cir. 2014) (in the § 2241 context).

Petitioner was substantially prejudiced by Respondents' § 241.4 noncompliance. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Yet Respondents erroneously deprived Petitioner of notice and the opportunity to be heard, leading to his subsequent detention for over four months. *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."). To consider the extent of the procedural due process violation, the Court examines the well-known *Mathews v. Eldridge* factors. *See also Dusenbery v. United States*, 534 U.S. 161, 167 (2002).

### 1. The Private Interests

For the first *Mathews* prong, the Court considers "the private interest that will be affected by the official action." *Dusenbery*, 534 U.S. at 167. "The interest in being free from imprisonment is the most significant liberty interest there is." *Bonilla Chicas v. Warden*, 821 F. Supp. 3d 782, 798 (S.D. Tex. 2026) (citation modified) (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)). Courts have likewise recognized that "individuals who have been conditionally released from detention have a protected interest in their 'continued liberty.'" *Villanueva*, 801 F. Supp. 3d at 704.

Before Respondents re-detained Petitioner, he lived in the United States, without incident, for over four years (Dkt. No. 1 at 4, ¶ 16). During his years-long release, he adhered to all conditions of his OOS (Dkt. Nos. 1 at 4, ¶ 16; 8 at 5). "There is no principled reason to find that [Petitioner] does not have an overwhelming liberty interest in his continued release that may not be removed without due process." *Villanueva*, 801 F. Supp. 3d at 704; *see also Deras Galdamez*, No. 5:25-cv-252, slip. op. at 9. This factor overwhelmingly weighs in Petitioner's favor.

2.  *Cost-Benefit Analysis*

Next, the Court explores the "cost-benefit analysis of the risks of an erroneous deprivation versus the probable value of additional safeguards." *Dusenbery*, 534 U.S. at 167. Here, the Court looks no further than the regulations themselves, as they were framed to provide Petitioner with notice and an opportunity to be heard. *Villanueva*, 801 F. Supp. 3d at 704; *Deras Galdamez*, No. 5:25-cv-252, slip. op. at 9. Respondents offer no basis for their failure to comply with the applicable regulations. The risk of erroneous deprivation is unquestionably high, and this factor weighs in Petitioner's favor.

3.  *The Government's Interest*

Finally, the Court considers "the Government's interest, including the function involved and any fiscal and administrative burdens associated with using different procedural safeguards." *Dusenbery*, 534 U.S. at 167. "To be sure, the [G]overnment has a weighty interest in removing deportable noncitizens, ensuring compliance with [OOS], and protecting the public." *Villanueva*, 801 F. Supp. 3d at 705. However, nothing in the record suggests that Petitioner violated his OOS or was a danger to the public. Nor have Respondents alleged Petitioner's removal is imminent. Thus, the Court finds no viable justification for Respondents to disregard their own regulations. This factor, too, weighs

in Petitioner's favor.

### E. The Due Process Violation Warrants Petitioner's Release

"Multiple courts have held that [Respondents'] failure to follow [their] own immigration regulations may warrant the release of a detained noncitizen." *Id.* at 700 (collecting cases). Other courts have gone so far as to deem the revocation itself void. *Qui v. Carter*, No. 25-3131-JWL, 2025 WL 2770502, at *4 (D. Kan. Sep. 26, 2025) ("[T]he [c]ourt concludes that because officials did not properly revoke petitioner's release pursuant to the applicable regulations, that revocation has no effect, and petitioner is entitled to his release."). "Even when a petitioner could be immediately re-detained, courts have found that release still vindicates this type of procedural due process violation." *Deras Galdamez*, No. 5:25-cv-252, slip. op. at 10–11 (citing *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 156 (W.D.N.Y. 2025)).

The suitable remedy in this case is release. After residing in the United States for more than four years, Petitioner was unlawfully detained for over four months. He was clearly deprived of notice and an opportunity to be heard, and Respondents have not even ventured to argue otherwise. "[T]he Court finds that the specific harm Petitioner suffered—revocation of release without due process—is remedied by granting his request for release and returning him to his status prior to the unlawful revocation." *Id.* at 11.

### F. *Zadvydas* is Presently Inapplicable

Respondents' argument predominantly focuses on the reasonable detention period outlined in *Zadvydas*, but the Court does not reach that argument at this juncture[5] (Dkt. No. 7 at 3–4). Instead, the Court rests its decision on the unlawful revocation of Petitioner's OOS. *Santamaria Orellana v. Baker*, No. CV 25-1788-TDC, 2025 WL

---

[5] The Court also declines to reach Petitioner's claims brought under the Administrative Procedure Act (*see* Dkt. No. 1 at 9, ¶¶ 41–47).

11

2444087, at *8 (D. Md. Aug. 25, 2025).

### IV.   CONCLUSION

For the foregoing reasons, Petitioner's habeas Petition (Dkt. No. 1) is **GRANTED IN PART**. All relief not expressly provided for in this Order is **DENIED**. Respondents' Motion for Summary Judgment (Dkt. No. 7) is **DENIED**.

Respondents are **ORDERED** to **RELEASE** Petitioner from custody to a public place **no later than 5:00 p.m. on June 26, 2026**. Respondents are **ORDERED** to **NOTIFY** Petitioner's counsel of the exact location and exact time of his release as soon as practicable and **no less than two hours before his release**. The parties are **ORDERED** to file a Joint Status Report **no later than 5:00 p.m. on June 30, 2026**, confirming that Petitioner has been released.

It is further **ORDERED** that Petitioner shall be released under the conditions of his OOS that were in effect prior to its improper revocation, and any revocation of Petitioner's OOS must be made pursuant to the relevant regulations and procedures governing revocation at 8 C.F.R. § 241.4(*l*)(1).

The Court's prior **ORDER**, that Respondents **NOTIFY** Petitioner's counsel and the Court of any planned removal of him from the United States, at least five (5) days before any such removal, **REMAINS IN PLACE**.

It is so **ORDERED**.

**SIGNED** June 25, 2026.

Marina Garcia Marmolejo
United States District Judge

12